**Ex parte Jimmy Lloyd WELBORN.**

**No. 69945.**

Court of Criminal Appeals of Texas,
En Banc.

March 14, 1990.

Brian W. Wice, Houston, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

### OPINION

CAMPBELL, Judge.

This is a post-conviction application for a writ of habeas corpus transmitted to this Court pursuant to Art. 11.07, V.A.C.C.P. from the trial court. Applicant was convicted by a jury of attempting to acquire a controlled substance by fraud. After finding that applicant had previously been convicted of a felony, the jury assessed his punishment at 98 years and one day in the Texas Department of Corrections.[1] The conviction was affirmed in an unpublished opinion by the Waco Court of Appeals.

---

1. Now the Texas Department of Criminal Justice, Institutional Division.

*Welborn v. State*, No. 10–81–023–CR (Tex. App.—Waco 1981). We will grant relief.

Applicant has raised numerous allegations of ineffective assistance of counsel; however, we ordered the application filed and set on six of the allegations. Applicant alleged he received ineffective assistance of counsel because counsel failed to: (1) voir dire the jury on the law of parties; (2) interview any of the State's witnesses; (3) object to a witness's statement that applicant was "intoxicated on drugs;" (4) object to the reading of the offense report by the prosecutor; (5) object to a portion of Exhibit No. 5 which contained a notation that applicant was "retd. as a parole viol. from OK City, OK;" and (6) investigate alleged jury misconduct.

On May 22, 1987, a hearing was held on applicant's writ. Applicant's attorney testified that he had been licensed to practice law for 27 years. Counsel testified that ninety-five percent of his practice was devoted to the practice of criminal law. He testified that applicant's case, seven years earlier, was his first jury trial. Counsel further testified that he did not interview the three State's witnesses. He spoke with applicant three times prior to trial. Counsel testified that no visit lasted more than fifteen minutes. As part of his pretrial investigation, counsel took some photographs of the pharmacy. He never introduced these photos into evidence.

Counsel admitted that he failed to voir dire the jury on the law of parties. He stated it was his understanding that the applicant was being tried as a party. He could not recall whether or not he explained the law of parties to the applicant. He was sure that he must have explained the theory to applicant during one of his conversations with the applicant prior to trial. However, he had no independent recollection of such a conversation.

Counsel admitted that he failed to interview any of the State's witnesses. He was "shocked" by the testimony of Sheriff Sessions that the applicant was under the influence of a controlled substance. Counsel failed to object to this testimony. Later, he was "surprised" when Sessions stated that

applicant had told Sessions that he had driven up from Buffalo with a friend to get a prescription filled. Counsel acknowledged that he should have tried to interview Sessions.

Counsel further testified that he failed to object to the reading of an offense report by Deputy Nicholson. The offense report was offered to establish that applicant was from Dallas and that his codefendant, Harrell, was from Irving. The alleged offense took place in Fairfield, Texas, some ninety miles from Dallas. He acknowledged that if he had objected it was likely that the offense report would have been excluded as hearsay. He stated that he did not object to the reading of the offense report as hearsay because he felt that the same information could possibly be established by the State in another more prejudicial manner.

Counsel admitted that he failed to object to hearsay portions of a pen packet. The pen packet was admitted with a notation, "Retd. as a parole viol. from OK. City, OK."

Counsel admitted that it was brought to his attention by applicant that there was possible jury misconduct in the jury room. Applicant learned of this from a Rev. Fitch, who sat on the jury. Counsel did not investigate for possible jury misconduct. He did not obtain an affidavit from Fitch or any other jury members.

Applicant also testified at the post-conviction writ hearing. He stated that the two or three times that he spoke with counsel prior to trial were devoted to discussions concerning fees for the most part. Counsel did not discuss the elements of the offense or the State's theory of the case with him. He was asked several times by counsel whether the pharmacist could identify him. Applicant stated that counsel led him to believe that if he could not be identified, he could not be convicted.

Applicant stated that a plea offer of five years was made by the State on the day of trial. He refused the offer. Applicant stated that if he had understood that he could be convicted as a party, he would have taken the offer. Applicant further

testified that he informed counsel of possible jury misconduct based on a conversation he had with Rev. Fitch. He asked counsel to get a statement from Fitch. Applicant alleged that counsel stated there was no need to interview Fitch because the jury's verdict was final.

The test to be applied in determining ineffective assistance of counsel is found in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As this Court has previously noted, no mechanistic formula is provided by *Strickland:*

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Butler v. State,* 716 S.W.2d 48, 54 (Tex.Cr. App.1986) quoting *Strickland,* 104 S.Ct. at 2064. A defendant seeking relief under *Strickland* must show that counsel's performance was deficient and the defendant must show that the deficient performance prejudiced the defense. *Butler,* 716 S.W.2d at 54. When clarifying the "prejudice" prong of this two part test, the *Strickland* Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Ex Parte Guzmon,* 730 S.W.2d 724, 733 (Tex.Cr.App.1987) quoting *Strickland,* 104 S.Ct. at 2068.

■ This standard has never been interpreted to mean that the accused is entitled to errorless or perfect counsel. *Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Cr.App. 1986). When reviewing a claim of ineffective assistance of counsel, judicial scrutiny of counsel's performance must be highly deferential. 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Whether the *Strickland* standard has been met is to be judged by "the totality of the representation." *Id.; Ferguson v. State,* 639 S.W.2d 307, 310 (Tex.Cr.App.1982). Isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination. *Bridge,* 726 S.W.2d at 571; *Johnson v. State,* 629 S.W.2d 731, 736 (Tex.Cr. App.1981). An applicant must show omissions or other mistakes made by counsel that amount to professional errors of a magnitude sufficient to raise a reasonable probability that the outcome of the trial would have been different but for the errors. *Butler,* 716 S.W.2d at 54. The test is to be applied at the time of trial, not through hindsight. *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex.Cr.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987).

■ It is evident that a criminal defense lawyer must have a firm command of the facts of the case as well as governing law before he can render reasonably effective assistance of counsel. *Ex Parte Ybarra,* 629 S.W.2d 943, 946 (Tex.Cr.App.1982); *Ex Parte Duffy,* 607 S.W.2d 507, 516 (Tex.Cr. App.1980). A natural consequence of this notion is that counsel has the responsibility to seek out and interview potential witnesses. *Ex Parte Duffy,* 607 S.W.2d at 517. It may not be argued that a given course of conduct was within the realm of trial strategy unless and until the trial attorney has conducted the necessary legal and factual investigation which would enable him to make an informed rational decision. 607 S.W.2d at 526. Counsel has a duty to bring to bear such skill and knowledge as will render the trial a "reliable adversarial testing process." 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

■ In the instant case, applicant asserts that one instance of ineffective assistance of counsel was the failure of trial counsel to voir dire the jury on the law of parties. The thrust of applicant's contention is that counsel was confused as to the applicable law in applicant's case. Applicant testified at the writ hearing that trial counsel did not explain the law of parties to him. He testified that trial counsel told

him if he could not be identified by the pharmacist as the person who passed the forged prescription, he could not be convicted.

Counsel testified that he was aware that applicant was being tried as a party to the offense. He had no independent recollection of explaining the theory of the State's case to applicant. Counsel testified that he was sure he did explain the law of parties to applicant.

Counsel's assertion that he was aware that applicant was being tried as a party is somewhat belied by the record below. Sheriff Sessions testified that he was alerted by pharmacist Bill Daniels that someone had attempted to pass a forged prescription. Sessions then staked out the pharmacy. He observed the arrival of the applicant and applicant's co-defendant, Harrell, the person who allegedly attempted to pass the forged prescription. Applicant remained in the car while his co-defendant went into the pharmacy. Insofar as the record shows, applicant never left the vehicle while in Fairfield until he was arrested. When questioned by Sessions, applicant allegedly told him that he had driven up from Buffalo to get a prescription filled. Deputy Nicholson testified that applicant was from Dallas, some ninety miles from Fairfield.

In his cross-examination of the State's witnesses, counsel consistently attempted to establish that none of the witnesses could identify the applicant as the person who attempted to pass the forged prescription. The tenor of counsel's questions to the State's witnesses tends to support applicant's contention that counsel was confused as to the applicable law. This Court has previously held that:

"Evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the commission of the offense, and encourages the commission of the offense, either by words or other agreement. *Cordova v. State*, 698 S.W.2d 107 (Tex.Cr. App.1985); *Tarpley v. State*, 565 S.W.2d 525 (Tex.Cr.App.1978). The evidence must show that at the time of the offense the parties were acting together, each contributing some part towards the execution of their common purpose. *Brooks v. State*, 580 S.W.2d 825 (Tex.Cr. App.1979). In determining whether a defendant participated in an offense as a party, the Court may examine the events occurring before, during, and after the commission of the offense, and may rely on the actions of the defendant which show an understanding and common design to commit the offense. *Beier v. State*, 687 S.W.2d 2 (Tex.Cr.App.1985); *Medellin v. State*, 617 S.W.2d 229 (Tex. Cr.App.1981)."

*Burdine v. State*, 719 S.W.2d 309, 315 (Tex.Cr.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). The fact that no person could identify applicant as the person who attempted to pass the forged prescription would not preclude a conviction under the law of parties. Sessions' testimony concerning applicant's out-of-court statement that applicant had driven down to get a prescription filled and Sessions' observing the person who allegedly attempted to pass the forged prescription get out of applicant's car was sufficient to support a conviction under the law of parties. Trial counsel's questions at trial appear to support the notion that he believed that applicant was being tried as a principal.

Turning to applicant's second allegation, he alleges that another instance of ineffective assistance of counsel occurred when counsel failed to interview any of the potential State's witnesses. As noted previously, a criminal defense lawyer must have a firm command of the facts as well as the governing law before he can render reasonably effective assistance of counsel. *Ex parte Ybarra*, 629 S.W.2d at 946. The natural consequence of this notion is that counsel has the responsibility to seek out and interview potential witnesses. *Ex parte Duffy*, 607 S.W.2d at 517.

Counsel testified that he was "surprised" when Sheriff Sessions stated that applicant had told Sessions that he had driven up from Buffalo with a friend to get a prescription filled. Counsel acknowledged

that he should have interviewed the Sheriff.

On direct examination, the State elicited testimony from Sessions concerning applicant's out-of-court statements. Counsel also failed to demand an evidentiary hearing outside the presence of the jury to inquire whether or not the statement was given voluntarily. *See Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Art. 38.22, V.A.C.C.P. It is clear from a review of the record that applicant's statement to Sessions was *the* key piece of evidence connecting applicant with the alleged crime.

When questioned at the writ hearing concerning the failure to discover the statements made by applicant to Sessions, counsel stated he felt that his client would tell him all things that developed at the scene of the arrest. This Court has held that counsel is charged with making an *independent investigation* of the facts of the case, eschewing wholesale reliance in the veracity of his client's version of the facts. *Ex parte Duffy*, 607 S.W.2d at 517. The only pre-trial investigation made by trial counsel involved the taking of photographs at the pharmacy and speaking with his client. It should also be noted that counsel spoke to applicant on only two or three occasions for no more than 15 minutes from June through October of 1980, a fact largely corroborated by counsel's own testimony.

In his third allegation, applicant asserts that trial counsel failed to object to the testimony of Sheriff Sessions concerning an extraneous offense. Trial counsel admitted he failed to object when Sessions testified that the applicant was under the influence of a controlled substance. It is well settled in Texas that an accused shall not be tried for some collateral crime or for being a criminal generally. *Porter v. State*, 623 S.W.2d 374, 385 (Tex.Cr.App. 1981), *cert. denied*, 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982). Because of our concern that an accused not be tried for some collateral crime or for being a criminal generally, testimony concerning extraneous offenses is admissible only in limited circumstances. *See e.g., Barefoot v. State*, 596 S.W.2d 875, 887 (Tex.Cr.App. 1980), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981).

In the instant case, counsel for the State referred to this extraneous offense in his closing argument during the guilt/innocence phase. Applicant's counsel stated he did not object to the State's jury argument because the statement would have been admissible as res gestae. The possibility that the statement was admissible under some theory of law should not alleviate counsel's burden to put the State's case to that "adversarial testing process" contemplated by the *Strickland* standard. By failing to object, counsel insured that no such testing process took place. *See e.g., Butler*, 716 S.W.2d at 56 (trial counsel's failure to interview witness and to present defense witness' testimony not justified because of fear witness would be impeached).

In his fourth and fifth allegations, applicant complains of trial counsel's failure to object to hearsay in two different instances. The first involved the reading into the record of the contents of an offense report that was never introduced into evidence during guilt/innocence to establish that applicant resided in Dallas, some ninety miles away. The second instance concerned trial counsel's failure to object to hearsay material contained in a pen packet. The portion of the pen packet complained of read "retd. as a parole viol. from OK City, OK."

Counsel explained that the failure to object in the first instance was a matter of strategy. Counsel stated that the material could have been introduced in a more damaging manner. Trial counsel did not explain why he failed to object to the hearsay material contained in the pen packet, and it is a reasonable deduction from the pen packet that the jury was informed that the applicant was a parole violater.

In his final allegation, applicant complains of trial counsel's failure to investigate possible jury misconduct. Trial counsel acknowledged he was informed of possible jury misconduct by applicant. Applicant told counsel that one of the jurors, a Rev. Fitch, allegedly stated that there was

some discussion of the parole law. Counsel offered no explanation why he did not investigate or obtain affidavits from the jurors. Certainly, if applicant could have shown that the jury's discussion of the parole law constituted jury misconduct resulting in a harsher sentence, applicant would have been entitled to relief. *See Sneed v. State*, 670 S.W.2d 262, 266 (Tex. Cr.App.1984). However, counsel's unexplained failure to investigate precluded this possibility.

Although, no one instance in the present case standing alone is sufficient proof of ineffective assistance of counsel, counsel's performance taken as a whole does compel such a holding. Counsel failed to conduct a reasonable investigation of the facts and the law. He did not attempt to interview any of the State's witnesses. Accordingly, trial counsel was "surprised" when Sessions testified as to applicant's out-of-court statement. He admits if he had known of the statement he would have advised applicant to accept the five year plea offer by the State. Instead, without conducting a reasonable investigation, counsel's gamble netted applicant a ninety-eight years and one day prison sentence.

Additionally, counsel seemed unfamiliar with the State's theory of the case. He allowed the jury to hear damaging hearsay statements without objection. He allowed the introduction of an extraneous offense during the guilt/innocence phase without objection. Trial counsel also failed to conduct any investigation into possible jury misconduct.

We find that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 693. We further hold that, because of counsel's failure to investigate possible jury misconduct and his failure to interview any of the State's potential witnesses, the evidence is "sufficient to undermine confidence in the outcome" of the applicant's trial. 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Therefore, we hold that the performance of counsel failed to meet the standard of reasonably effective assistance of counsel established by the Supreme Court in *Strickland v. Washington, supra. See Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Cr. App.1986) (adopting the *Strickland* standard).

The relief prayed for is granted. The judgment of the trial court is reversed, and applicant is remanded to the custody of the Sheriff of Freestone County to answer the indictment against him. A copy of this opinion shall be forwarded to the Texas Department of Criminal Justice, Institutional Division.

WHITE, J., concurs in the result.